**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **Petitioner,** | § | |
| | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO:** |
| **HOUSTON POLICE DEPARTMENT;** | § | |
| **OFFICER C.R. MEADE,** individually | § | **4:25-cv-00427** |
| and in his official capacity**;** | § | |
| **MONTGOMERY COUNTY** | § | |
| **DISTRICT ATTORNEY'S OFFICE;** | § | |
| **LT. INV. JASON SALTER,** individually | § | |
| and his official capacity; **DISTRICT** | § | |
| **ATTORNEY BRETT LIGON,** | § | |
| individually and in his official capacity; | § | |
| and **MAGISTRATE/JUDGE ECHO** | § | |
| **HUTSON,** individually and in her official | § | |
| capacity; and **HARRIS COUNTY** | § | |
| **ATTORNEY'S OFFICE.** | § | |
| | § | |
| **All Jointly and Severally.** | § | |

---

## PETITIONER'S ORIGINAL COMPLAINT

---

     **NOW COMES,**                              , a former

, filing this Original Complaint and asserting a legal action against the Houston Police

Department ("HPD"), Houston Police Officer C.R. Meade ("Meade"), the Montgomery County

District Attorney's Office, Lt. Inv. Jason Salter ("Salter"), District Attorney Brett Ligon

("Ligon") and Magistrate/Judge Echo Hutson ("Hutson"),and the Harris County Attorney's

Office all in their Official Capacities and their Individual Capacities.  The Respondents, jointly

and severally, infringed upon Petitioner's rights as guaranteed by the Constitution and the laws

of the United States of America and the State of Texas.

## I.    <u>NATURE OF THE CASE</u>

The Petitioner brings this lawsuit under 42 U.S.C. § 1983 and raising other United States Constitutional claims and supplemental state-law claims concerning the actions of the Respondents.  These claims include but are not limited to unlawfully seizure of Petitioner's person, malicious prosecution, violation of the Petitioner's United States Constitutional Rights, defamation, negligence, several violations of the Texas Penal Code and the tort of defamation.

The actions and conduct of the Respondents, collectively and individually, all or in part, are the result of practices, policies, patterns, customs, and/or deliberate indifferences of the Respondents.

## II.    <u>INTRODUCTION</u>

Petitioner individually brings this Federal Civil Action for damages against Respondents, HOUSTON POLICE DEPARTMENT, OFFICER C.R. MEADE, MONTGOMERY COUNTY DISTRICT ATTORNEY'S OFFICE, LT. INV. JASON SALTER, DISTRICT ATTORNEY BRETT LIGON, MAGISTRATE/JUDGE ECHO HUTSON, and the HARRIS COUNTY ATTORNEY'S OFFICE for violating the Petitioner's Civil and Constitutional Rights under the First Amendment for acts of retaliation against the Petitioner's use of Free Speech; the Fourth Amendment for unlawful seizure, lack of Probable Cause, wrongful arrest/deprivation of liberty; the Fourteen Amendment for violation of Procedural and Substantive Due Process, and denying Equal Protection under the laws of the United States Constitution; malicious prosecution; defamation; conspiracy; and supplemental Texas Penal Code statutes.

### III.    JURISDICTION

1.  This Court has federal jurisdiction pursuant to 28 U.S.C. 1331 – Federal Question, 1343 –
    Civil Rights, 42 U.S.C. 1983 and 1988, and the First, Fourth, and Fourteenth Amendments of
    the United States Constitution.  This Court has supplemental jurisdiction pursuant to 28
    U.S.C. 1367(a).

### IV.    VENUE

2.  Venue is proper in this Court because the incidents at issue took place in Montgomery
    County, Texas, within the United States Southern District of Texas.  This lawsuit arises from
    actions executed by all Respondents which include violation of the Petitioner's United States
    Constitutional Rights under the First Amendment of the right to Free Speech; his United
    States Constitutional Rights under the Fourth Amendment of the right to not be subjected to
    an Unlawful Seizure (Wrongful Arrest) and lack of Probable Cause; his United States
    Constitution Rights under the Fourteenth Amendment of the right to Due Process and Equal
    Protection under the law, malicious prosecution, conspiracy, and supplemental Texas Penal
    Code statutes and the tort of defamation.

### V.    PARTIES

3.  Petitioner is above the age of eighteen, and at the times relevant to this Complaint was a
    resident of Montgomery County, Texas.

4.  Respondent, the HOUSTON POLICE DEPARTMENT is a municipal governmental entity
    located in Houston, Harris County, in the State of Texas.  HOUSTON POLICE
    DEPARTMENT is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case,
    acted under the "color of law".  HOUSTON POLICE DEPARTMENT may be served with

Summons at the City of Houston, 901 Bagby, Houston, Texas 77002 or wherever the Department may be found.

5.  Respondent, OFFICER C.R. MEADE, PR# 129981, is a Houston Police Department officer and at all relevant times was acting under the "color of law" and as the agent of the Houston Police Department.  Meade is sued in his official capacity for punitive and compensatory damages.  He can be served with Summons at the City of Houston, 901 Bagby, Houston, Texas 77002, at his designated station assignment, or wherever he may be found.

6.  Respondent, MONTGOMERY COUNTY DISTRICT ATTORNEY'S OFFICE, is a municipal governmental entity, and is a "person" under 42 U.S.C. § 1983, located in Montgomery County of the State of Texas.  MONTGOMERY COUNTY DISTRICT ATTORNEY'S OFFICE is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case, this entity acted under the "color of law".  MONTGOMERY COUNTY DISTRICT ATTORNEY'S OFFICE may be served with Summons at the Lee G. Alworth Building, 207 Phillips St., 2nd Floor, Conroe, Texas, 77301 or wherever this entity may be found.

7.  Respondent, LT. INV. JASON SALTER, is an investigator with the Montgomery County District Attorney's Office, which is located in Montgomery County of the State of Texas and at all relevant times was acting under the "color of law" and as the agent of the Montgomery County District Attorney's Office.  Salter is sued in his official capacity for punitive and compensatory damages.  He can be served with Summons at the Lee G. Alworth Building, 207 Phillips St., 2nd Floor, Conroe, Texas, 77301 or wherever he may be found.

8.  Respondent, DISTRICT ATTORNEY BRETT LIGON, is the District Attorney for Montgomery County, Texas and at all relevant times was acting under the "color of law" and as the leader and agent of the Montgomery County District Attorney's Office.  Ligon is sued

in his official capacity for punitive and compensatory damages. He can be served with Summons at the Lee G. Alworth Building, 207 Phillips St., 2nd Floor, Conroe, Texas, 77301 or wherever he may be found.

9.  Respondent, MAGISTRATE/JUDGE ECHO HUTSON, is a judicial magistrate for Montgomery County of the State of Texas and at all relevant times was acting under the "color of law" and is a judicial magistrate and agent of Montgomery County of the State of Texas. Hutson is sued in her official capacity for punitive and compensatory damages. She can be served with Summons at the Lee G. Alworth Building, 207 Phillips St., 2nd Floor, Conroe, Texas, 77301 or wherever she may be found.

10. Respondent, HARRIS COUNTY ATTORNEY'S OFFICE, is a municipal governmental entity, and is a "person" under 42 U.S.C. § 1983, located in Harris County of the State of Texas. HARRIS COUNTY ATTORNEY'S OFFICE is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case, this entity acted under the "color of law". The HARRIS COUNTY ATTORNEY'S OFFICE may be served with Summons at 1019 Congress St., Houston, Texas 77002, or wherever this entity may be found.

The Petitioner will respectfully show this Honorable Court as follows:

## VI.    FACTS

11. On September 5th, 2023, at approximately 5:17 pm while Petitioner was operating his motor vehicle – a 2024 GMC Sierra 2500 – in a safe and legal manner on FM 109, west bound in Willi, Texs.

12. Petitioner observed a marked Houston Police Department ("HPD") Chevrolet Tahoe identified by Texas License Plate Number 1193987 and HPD number 44128.

13. Petitioner observed that this particular HPD vehicle failed to maintain a single lane of traffic multiple times and appeared to be traveling well below the posted speed limit.

14. For his safety, the Petitioner chose to accelerate past the unsafe HPD driver while never exceeding the posted speed limit.

15. As the Petitioner safely passed the HPD Tahoe, the HPD Officer later Identified as Meade activated his overhead lights initiating a traffic stop.

16. Petitioner, due to his                experience, knew that Meade's actions were illegal; nonetheless, the Petitioner slowed and pulled his vehicle over because he felt shocked of the Meade's blatant disregard of the law or incompetence.

17. Meade then proceeded to drive up next to the Petitioner's passenger door, impeding traffic yelling on his Public Announcement ("PA") system words that the Petitioner could not hear clearly as his window was up.

18. Meade then drove off.

19. Petitioner then proceeded in his direction of travel, forcing him to be behind Meade due to the traffic pattern lanes merging into one lane, primarily due to active road construction.

20.  The traffic came to long stop due to a traffic light and construction.

21. Petitioner approached Meade with one hand up and his other hand holding his phone, presenting himself in a submission manner/position, indicating that he was unarmed.

22. Upon making verbal contact with Meade, Petitioner stated that what he did was illegal, and that he wanted Meade's name and badge number to file a complaint.  At that moment in this scenario, Meade's name was unknown.

23. Meade did not provide the Petitioner his name and badge number but rather intentionally did not disclose and did conceal this information to the Petitioner.

24. The Petitioner walked back to my vehicle and drove off.

25. Meade then began to follow the Petitioner.

26. The Petitioner skillfully took an unintended route to confirm that Meade was following him by pretending to turn into a neighborhood and then went the other direction while he was behind the Petitioner the whole time.

27. This particular event is articulated and admitted in Meade's report.

28. Based on the totality of circumstances, the Petitioner feared for my life and safety.

29. The Petitioner called the Montgomery County Sheriffs Officer to report the Meade who behavior was rouge, and frankly scary.

30. The Montgomery County Sheriff with whom the Petitioner spoke agreed that the HPD officer's actions were not legal.

31. Later, Meade filed an HPD Offense Report which contained several untruths and false information.

32. Meade intentionally and knowingly provided false information, with deliberate indifference, with reckless disregard for the truth, made false statements, made material omissions, created an untrue, false, and misleading report in an attempt to establish an erroneous and unlawful "Probable Cause".

33. Meade lied in his report stating that the Petitioner said, "I'm going to report your ass" and that the Petitioner "ran back to his vehicle".

34. Further, the Petitioner has had the opportunity to view Meade's dashcam and there is/was no evidence of the Petitioner's "reckless driving" on dashcam video, only his false articulation on the report.

35. The untruths, inaccuracies, and misrepresentations can be refuted through a review of Meade's dashcam footage, as well as the audio and video evidence recorded by the Petitioner on his personal cell phone.

36. A few weeks later the Petitioner received correspondence stating that he had a warrant for his arrest on the charge of reckless driving.

37. The Petitioner went to Montgomery County in person to resolve the matter by paying a Peace Bond – which is typical protocol in this matter.

38. Though, the Petitioner was arrested, booked, and indicted.

39. As part of the booking process the Petitioner's booking photograph was posted on a public internet site, as if he was a felonious and dangerous criminal.

40. The Petitioner did file a complaint with HPD and received a letter that Meade was "exonerated".

41. The Petitioner endured a trial where on February 1st, 2024, the matter was ultimately dismissed – Class B Misdemeanor of Reckless Driving, with the stipulation that he complete, and did, an Anger Management course.

42. Moreover, the Petitioner sought an Expunction which was issued on March 6th, 2024, approximately six weeks after the dismissal of his Class B Misdemeanor case.

43. This matter has interfered with the Petitioner's ability to secure continuity in employment.

44. The Petitioner's trade is a Senior Health, Safety, and Environmental Professional and when charges such as the ones that were brought against him show up on a background check, the applicant's candidacy is excluded from the candidate pool.

45. The detrimental and serious effects of the untruths made by Meade were intentional and knowingly with deliberate indifference, with reckless disregard for the truth, contained false

statements and material omissions that were deliberately and intentionally reported by Meade that launched a domino effect of the excessive and unjust violation of several of the Petitioner's Constitutional Rights.

46. When Meade filed his report, he subsequently brought it to Montgomery County where Respondent Lt. Inv. Jason Salter, an investigator with the Montgomery County District Attorney's Office, as affiant, signed a Complaint and Information for the Class B misdemeanor against the Petitioner.

*The Dominos*

47. *The first domino to fall*: Had there been a proper investigation, not based solely on Meade's report, there would have been a finding of No Probable Cause.

48. *The second domino*: On September 20, 2023, Respondent Judicial Magistrate Echo Hutson then signed and issued an Arrest Warrant based on Meade's affidavit of untruths and falsehoods, that were deliberately and intentionally reported.

49. *The third domino*: The Petitioner received correspondence stating that he had a warrant for his arrest on the charge of reckless driving and when he went in person to Montgomery County to resolve the matter by paying a Peace Bond – which is typical protocol in this matter – he was arrested and booked.

50. *The fourth domino*: The Petitioner's booking photograph was posted on a public internet site as if he were a felonious criminal, thereby tarnishing his reputation and employment opportunities.

51. *The fifth domino*: The Petitioner had to retain an attorney for the trial and the subsequent expunction.

52. *The sixth domino*: On August 8th, 2024, the Petitioner was deposed in an unrelated matter in which he was an "expert". During the deposition a Harris County Attorney asked specific questions that were directly related to the matter that was maliciously instigated by Meade. All parties to this matter, HPD, Meade, the Montgomery County District Attorney's Office, Salter, District Attorney Ligon, Hutson, and the Harris County Attorney's Office all had the duty to protect and not disclose any information or content that was attached to the expunction – the expunction makes this matter as if it never existed, but someone or everyone failed to remember that. One or more of these parties conspired to release and/or share this expunged matter with the Harris County Attorney's Office in a continuation of the violation of the Petitioner's rights.

## VII.    CAUSES OF ACTION

### A.  42 U.S.C. §1983 — DEPRIVATION OF RIGHTS: FIRST, FOURTH, FOURTEEN AMENDMENTS

53. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

54. Petitioner sues all Respondents, except the Harris County Attorney's Office, for multiple United States Constitutional violations under 42 U.S.C. §1983. To prevail in a claim under §1983, a Petitioner must prove

    i.   that his constitutional rights were violated, and

    ii.  that the violation was caused by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40, 1988 U.S. LEXIS 2744, 56 U.S.L.W. 4664.

55. The Petitioner alleges multiple claims under 42 U.S.C. §1983 which includes a violation of his United States Constitutional Rights under the First Amendment of the right to Free Speech; his United States Constitutional Rights under the Fourth Amendment of the right to not be subjected to an Unlawful Seizure (Wrongful Arrest) and lack of Probable Cause; and his United States Constitution Rights under the Fourteenth Amendment of the right to Due Process and Equal Protection under the law.

    *i.* *Violation of Petitioner's Guaranteed Rights Under the First Amendment of the United States Constitution (Free Speech) as to All Respondents, except the Harris County Attorney's Office.*

        a. To establish a First Amendment retaliation claim under 42 U.S.C. §1983, the plaintiff must demonstrate: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the plaintiff for exercising that right, (3) a retaliatory adverse act, and (4) causation, *McCann v. Moreno*, 2016 Tex. App. LEXIS 7715, *Greer v. Reaux*, 2020 Tex. App. LEXIS 1634, 2020 WL 948368.

        b. Further, to establish a §1983 claim for a violation of free speech, a plaintiff must demonstrate that their speech involved a matter of public concern, that their interest in commenting on these matters outweighed the government's interest in promoting efficiency, and that the speech was a motivating factor in the adverse action taken against them *Jackson v. Port Arthur Indep. Sch. Dist.*, 2017 Tex. App. LEXIS 3527, *Dallas County v. Gonzales, 183 S.W.3d 94, Hurley v. Tarrant County*, 232 S.W.3d 781.

c. Here, the Petitioner shows that the exercise of his First Amendment right to Free Speech was a substantial or motivating factor in the actions of Meade.

d. It was only after the Petitioner spoke to Meade, while they were stopped in traffic, that Meade then began to follow the Petition, then fabricated an untruthful, false, and misleading report.

e. This action by Meade can only be described as retaliatory. Meade was outside his jurisdiction, was off duty, did not like what the Petitioner had to say to him (calling out his unsafe vehicular maneuvering).

f. In a retaliatory act, Meade followed and harassed the Petitioner, ultimately resulting in a false report that then caused the *Six Dominos* (articulated in lines 46 through 51 above) to fall.

g. To recap: 1) a specific constitutional right – First Amendment, Free Speech; (2) the defendant's intent to retaliate against the plaintiff for exercising that right – Meade intentionally and knowingly provided false information, with deliberate indifference, with reckless disregard for the truth, made false statements, made material omissions, created an untrue, false, and misleading report and filed with it with HPD, and then with Montgomery County. All this was used to create a false "Probable Cause", whereby Respondents Salter, Ligon, and Hutson all processed this "report"; (3) a retaliatory adverse act – the actions of the Respondents Salter, Ligon, and Hutson all and/or collaboratively and erroneously determined that there was Probable Cause, which lead to a warrant being issued, a wrongful arrest, defamatory internet postings to the public, unnecessary litigation,

unnecessary legal fees, conspiracy to release/share an expunged matter; and (4) causation – a violation of various Texas Penal Codes (these will be articulated in another section), during a confidential deposition for nefarious purposes.

h.  Lastly, to establish a §1983 claim for violation of free speech, the Petitioner must (1) demonstrate that their speech involved a matter of public concern. Here, the matter of public concern was the Petitioner, recognizing from his former capacity as a        officer, that Meade was driving in an unsafe manner and explicitly told him in a professional, non-aggressive, and submissive manner.

i.  Further, the (2) Petitioner's interest in commenting on these matters outweighs the government's interest in promoting efficiency.  Here, it is not efficient for the government (HPD) to promote unsafe maneuvering by their HPD officers, including Meade's.

j.  In the third prong, (3) the speech was a motivating factor in the adverse action taken against them.  Here, it is certain that the Petitioner telling Meade about his unsafe maneuvering made Meade act in a way in which he then targeted the Petitioner and then created the false HPD report whereby intentionally and knowingly providing false information, with deliberate indifference and with reckless disregard for the truth, including making misleading and material omissions.

ii.  *Violation of Petitioner's Guaranteed Rights Under the Fourth Amendment of the United States Constitution (free from unreasonable seizure/Wrongful Arrest and lack*

*of Probable Cause) as to All Respondents, except the Harris County Attorney's Office.*

    a.   The Fourth Amendment protects against unreasonable searches and seizures, and any warrant issued must be based on Probable Cause supported by oath or affirmation *Brown v. Wallis*, 101 S.W. 1068, *Tex. Const. Art. I, § 9, Searches and Seizures.*  If an officer knowingly provides false information to obtain a warrant, this is a violation of the Fourth Amendment, leading to a wrongful arrest claim under 42 U.S.C. § 1983; § 62.03 Deprivation of Rights is codified in the treatise "*Texas Torts and Remedies*" *City of Houston v. Aspenwood Apt. Corp.*, 2002 Tex. App. LEXIS 509.

    b.   When a police officer intentionally lies on a report, leading to false probable cause, a wrongful warrant, and a wrongful arrest, several constitutional, civil rights, or equal protection claims can be made. Under Section 1983, a plaintiff can assert a claim if the officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or material omissions in the application for a warrant, and such statements or omissions were necessary to the finding of probable cause. This is based on the precedent set in *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978).

    c.   Without the false statements made by Meade, and ratified and prosecuted by all other Respondents (HPD, the Montgomery County District Attorney's Office, Salter, Ligon, and Hutson) the remaining content of the affidavit was insufficient to establish probable cause.  The affidavit contained gross untruths and misleading information, failing to provide sufficient facts to

support an independent judgment by Hutson that Probable Cause existed. This can be proved up by the fact that the entire matter was expunged, and that the Petitioner's own cell phone recording controverts Meade's written narrative.

d. The remaining content of the affidavit was insufficient to establish Probable Cause. The affidavit must provide sufficient facts to support an independent judgment by the magistrate that probable cause exists, as established in Illinois v. Gates and other relevant cases *Martinez v. State*, 660 S.W.3d 179, *State v. McLain*, 337 S.W.3d 268, *Gonzales v. State*, 481 S.W.3d 300.

e. The false statements were essential to the Probable Cause finding, and without them, the warrant would not have been issued.

f. Here, considering the supporting case law and citations above, the Petitioner's Fourth Amendment guaranteed rights to be free from Unreasonable Seizure/Wrongful Arrest and lack of Probable Cause were grossly violated by all Respondents, except the Harris County Attorney's Office – but for Meade's false and untruthful report, Meade's affidavit would not have been sufficient for a finding of Probable Cause.

g. The Montgomery County District Attorney's Office, Salter, Ligon, and Hutson are all culpable because they took Meade's statement on its face and true and correct despite him not being a law enforcement officer who was out of jurisdiction and off-duty when he engaged in his nefarious and malicious escapade against the Petitioner.

iii. *Violation of Petitioner's Guaranteed Rights Under the Fourteenth Amendment of the United States Constitution – the Right to Due Process and Equal Protection under the law.*

a. The Fourteenth Amendment provides for Due Process, Procedural and Substantive, and Equal Protection under the law.

b. Procedural Due Process ensures that government decisions are made with sufficient procedural safeguards, such as notice and meaningful opportunity to be heard. *Williams v. Davis*, 628 S.W.3d 946.

c. Here, the Petitioner's right to Procedural Due Process was violated. Meade set this Constitutional violative circus in motion when he obtained his warrant through deceit. Further, the lies and false and misleading statements in his report and affidavit were made knowingly, intentionally, and with reckless disregard for the truth AND his false statements were necessary to the finding of probable cause.

d. In Texas, the knowing use of false testimony by a State actor (Meade) violates Due Process when there is a "reasonable likelihood" that the false testimony affected the outcome of the trial. This standard is more stringent than the standard applied to Brady claims of suppressed evidence *Ex parte Ghahremani,* 332 S.W.3d 470. The false testimony must be material, meaning it must have had a significant impact on the judgment of the jury *Ex parte Wood,* 2018 Tex. Crim. App. Unpub. LEXIS 782.

e. Here, Meade's report was quite salacious. It would have been logical that all of the other Respondents should have questioned the contents of Meade's

report.  Though, they all fell in, rank and file, going through the motions and not caring, recognizing, nor investigating a report from Meade, an HPD off-duty, out of jurisdiction officer, which clearly started the chain reaction of the fall of the *Six Dominos*.

f.  Additionally, a Due Process violation may arise not only through false evidence specifically elicited by the State but also by the State's failure to correct testimony it knows to be false.  *Even if the prosecutor does not know that the evidence is false, it is enough that he or she should have recognized the misleading nature of the evidence* [Emphasis Added] *Barnett v. State*, 420 S.W.3d 188.  The essence of the claim is that the State knowingly presented false testimony, and the police report is merely evidence that the testimony was false and that the State knew it was false *Ex parte Ghahremani*, 332 S.W.3d 470.  Here, Respondents HPD, Montgomery County District Attorney's Office, Salter, Ligon, and Hutson all should have recognized the misleading nature of the evidence because of the salaciousness and that the dashcam and bodycam which were exclusively available to all of these Respondents could have used it to verify whether or not the report and the affidavit aligned.  Truly negligible of each Respondent.

g.  Therefore, if a police officer knowingly or recklessly includes false information in an affidavit to obtain an arrest warrant, and this false information is material to the finding of probable cause, the plaintiff's

Procedural Due Process rights are violated *Cates v. State*, 120 S.W.3d 352,

*Thom v. State*, 437 S.W.3d 556, *Perry v. State*, 1994 Tex. App. LEXIS 380.

h.  Substantive Due Process protects individuals from arbitrary and capricious

government actions that are not related to a legitimate state interest *Mitchell*

*v. Amarillo Hosp. Dist.*, 855 S.W.2d 857, *County of Dallas v. Wiland*, 216

S.W.3d 344.

i.  Here, the Petitioner was subjected to arbitrary and capricious government

action, not related to a government interest because once Meade set the

retaliatory circus in motion, everything that followed his report of lies

became arbitrary, capricious, intentional, and malicious.  The entire circus:

the report, the false affidavit, the issuance of the wrongful warrant, the

wrongful arrest, the Petitioner's loss of liberty, the defamation of the

Petitioner because of the booking photograph being posted on public

internet sites, and the malicious prosecution ALL led to the many violations

of the Petitioner's Constitutional Rights, including Substantive Due Process.

Therefore, the Petitioner's rights under the Substantive Due Process Clause

of the Fourteenth Amendment were substantially and grossly violated.

j.  Equal Protection rights under the Fourteenth Amendment require that

individuals in similar situations be treated equally by the law and Equal

Protection claims can be brought by individuals who allege that they have

been intentionally treated differently from others similarly situated with a

rational basis for the difference in treatment. *Leonard v. Abbott*, 171 S.W.3d

451.  This typically involves demonstrating that the differential treatment

was not related to a legitimate state interest or was based on an

impermissible classification, such as race or gender *In re Stephenson,* 693

S.W.3d 364, *Byers v. Patterson*, 219 S.W.3d 514, *Gatesco Q.M. Ltd. v. City

of Houston*, 503 S.W.3d 607, 2016 Tex. App. LEXIS 11414.

k.  In the context of a 42 U.S.C. §1983 matter such as this one, the plaintiff

must also establish that the alleged deprivation of rights was committed by a

person acting under the color of state law, meaning that the defendant's

actions must be fairly attributable to the state. *T.L. v. Cook Children's Med.

Ctr.*, 607 S.W.3d 9, *Hickman-Bey v. Tex. Dep't of Crim. Justice*, 2010 Tex.

App. LEXIS 4246, *County of Wood v. Rivers*, 51 S.W.3d 626.  The plaintiff

must provide evidence that the state action directly caused the violation of

their constitutional rights *T.L. v. Cook Children's Med. Ctr.*, 607 S.W.3d 9,

*Hickman-Bey v. Tex. Dep't of Crim. Justice*, 2010 Tex. App. LEXIS 4246.

l.  Here, Meade, an HPD officer was acting under the color of law and his

retaliatory acts which culminated in the submission of a false report caused

the violations of the Petitioner's Constitutional rights, among other

violations.

m.  The Petitioner can prove and has proven through the process of a malicious

prosecution, that that Meade's and all of the other Respondent's actions that

followed, were attributable to the state.

n.  The Petitioner was certainly treated differently than others that were

similarly situated.  There were other drivers on the road, but for the

petitioner calling out Meade's unsafe maneuvering, there was no other

reason for Meade to target the Petitioner.  Meade didn't target any other drivers on the road that day.

56. Therefore, considering the information in this section, *ALL* Respondents, except the Harris County Attorney's Office, should be found liable to the Petitioner for violation of his First, Fourth, and Fourteenth Amendment Rights.

## B.  MALICIOUS PROSECUTION

57. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

58. Petitioner sues all Respondents, except the Harris County Attorney's Office, for Malicious Prosecution and the damages which flowed thereafter.

59. When Meade filed his false report, he subsequently brought it to Montgomery County.

60. On September 18th, 2023, Respondent Lt. Inv. Jason Salter, an investigator with the Montgomery County District Attorney's Office, as affiant, signed a Complaint and Information for the Class B misdemeanor against the Petitioner.

61. On September 20th, 2023, Respondent Judicial Magistrate Echo Hutson then signed and issued an Arrest Warrant based on Meade's affidavit of untruths and falsehoods, that were deliberately and intentionally reported – the *Second Domino*, Line #48.

62. This then began the *domino effect* that led to the Petitioner's Malicious Prosecution.

63. The elements of Malicious Prosecution in a §1983 case are the same as those under Texas common law.  To establish a claim for Malicious Prosecution under §1983, a plaintiff must demonstrate:

> (1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3)

termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff as a result of the prosecution *Gunnels v. City of Brownfield,* 153 S.W.3d 452, *Metzger v. Sebek*, 892 S.W.2d 20, *Hamby v. Dysart*, 1999 Tex. App. LEXIS 1630.

64. Here, the Petitioner suffered significant damages as a result of the Malicious Prosecution which began with Meaded and continued through all Respondents, except the Harris County Attorney's Office.

65. The elements and Petitioner's proffer to show Malicious Prosecution:

   i. (1) The commencement of a criminal prosecution against the plaintiff:  Here, the commencement of the criminal prosecution began when Salter signed and issued the Complaint and Information on September 18th, 2023.

   ii. (2) Causation (initiation or procurement) of the action by the defendant: Here, the causation begins with the issuance of the wrongful warrant signed by Hutson and then the wrongful arrest and loss of liberty occurred with the Petitioner went on his own volition to Montgomery County to investigate the warrant and likely pay a pace bond so that he would have the time to figure out with this warrant was all about.

   iii. (3) Termination of the prosecution in the plaintiff's favor:  Here, the criminal matter against the Petitioner was dismissed, if favor of the Petitioner, on February 1st, 2024.

   iv. (4) The plaintiff's innocence: The proceedings concluded determining that the Petitioner was innocent of the false allegations and affidavit statement made by Meade.

v.  (5) The absence of probable cause for the proceedings:  Here, Meade knowingly and deliberately, with reckless disregard for the truth, made false statements or material omissions in the application for a warrant, and these statements and omissions were necessary to the finding of Probable Cause.  But for Meade's false reports, false affidavit, lack of verification since he was not an officer within the jurisdiction, was off-duty, and that the report itself was salacious, all Respondents within the chain of events, except for the Harris County Attorney's Office, either knew or should have known that more effort and care should have been taken to assure that the report was truthful.  Not doing so set off a chain of a multitude of Constitutional violations, torts, and violations of the Texas Penal Code.

vi.  (6) Malice in filing the charge: Here, the malice started with the false report and continued in a malice state. When other others subsequently act upon a malicious act – here, specifically the retaliatory act of Meade, the actions taken in furtherance of the original malicious intent are malicious.  All other actors in the chain contributed to the overall harmful purpose of the original act.  This is a conspiracy.

vii. (7) Damage to the plaintiff as a result of the prosecution: Here, the Petitioner suffered several damages which include: defamation because his booking photo was blasted on a public internet site, which cased challenges in his current professional endeavors; loss of liberty; attorney's fees; discharge, and therefore the loss of personal days from his place of employment to attend court proceedings; violation of his Constitutional Rights; and a victim of a nefarious conspiracy.

66. The Petitioner meets all of the required elements required for a common-law Malicious Prosecution claim, including the demonstration of the absence of Probable Cause and the above-mentioned damages. See Line 64. vii.

67. Therefore, considering the information in this section, *ALL* Respondents, except the Harris County Attorney's Office, should be found liable to the Petitioner for Malicious Prosecution.

## C. DEFAMATION

68. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

69. Petitioner sues all Respondents, except the Harris County Attorney's Office, for Defamation and the damages which flowed thereafter.

70. In Texas, the legal implications of Defamation resulting from law enforcement posting booking photos on a public internet site in cases of wrongful arrest and malicious prosecution are damaging to a plaintiff.

71. Defamation in Texas requires the plaintiff to prove that the defendant published a statement that was defamatory concerning the plaintiff while acting negligently regarding the truth of the statement *Montemayor v. Ortiz*, 208 S.W.3d 627.  A statement is considered defamatory if it tends to injure one's reputation, exposing one to public hatred, contempt, ridicule, or financial injury Sec. 73.001. Elements of Libel.

> A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury. Sec. 73.001. Elements of Libel.

72. In cases of wrongful arrest and malicious prosecution, such as this matter, if the arrest was made based on false information knowingly provided by an individual, that person can be held liable for malicious prosecution.  The elements required to establish a claim for malicious prosecution in Texas include the commencement of a criminal prosecution against the plaintiff, initiated or procured by the defendant, terminated in favor of the plaintiff, who was innocent, without probable cause, with malice, resulting in damage to the plaintiff  *Hill v. Keliher*, 2022 Tex. App. LEXIS 502.  Additionally, if the booking photos are published and the arrest is later found to be wrongful, the plaintiff has claim for defamation if the publication of the photos caused reputational harm.

73. Here, the Petitioner's booking photo was blasted on a public facing internet site, screaming his arrest.  This caused the Petitioner harm and has damaged his reputation because the wrongful arrest has prevented him from gaining new employment opportunities.  His current career industry requires his safety record be "clean" and when he made finalist lists, and a background check was conducted and this matter popped up, he was immediately excluded from the candidacy.

74. Further, the published a statement that was defamatory concerning the Petitioner while tall of the Respondents, except the Harris County Attorney's Office, acted negligently regarding the truth.

75. Therefore, considering the information in this section, *ALL* Respondents should be found liable to the Petitioner for Libel/Defamation.

### D.  CONSPIRACY

76. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

77. Petitioner sues all Respondents, INCLUDING the Harris County Attorney's Office, for Conspiracy and the damages which flowed thereafter.

78. For context for this Cause of Action, the Petitioner's former occupation as a    Officer has allowed him the opportunity to be hired as an expert witness in matters which involve law enforcement.  The issues that he may testify to may include issues such as law enforcement training, policy, procedure, failure to train, et cetera.

79. To refresh:

- After the Malicious Prosecution, the Petitioner sought an Expunction which was issued on March 6th, 2024, approximately six weeks after the dismissal of his Class B Misdemeanor case.

- On August 8th, 2024, the Petitioner was deposed by the Harris County Attorney, in an unrelated matter, in which the Petitioner was an "expert".

- During the deposition a Harris County Attorney asked specific questions that were directly related to the matter that was maliciously instigated by Meade.

- All parties to this matter - HPD, Meade, the Montgomery County District Attorney's Office, Salter, Ligon, and Hutson all had the duty to protect and not disclose any information or content that was attached to the expunction – the expunction makes this matter as if it never existed, but someone or everyone failed to remember that.

- One or more of these parties conspired to release and/or share this expunged matter with the Harris County Attorney's Office in a continuation of the violation of the Petitioner's rights and also a State statutory privilege.

80. The legal implications of an expunction in Texas are significant. When an expunction order is final, the release, maintenance, dissemination, or use of the expunged records and files for

any purpose is *prohibited.* [Emphasis added.]  The person whose records have been

expunged may deny the occurrence of the arrest and the existence of the expunction order,

except when *questioned under oath in a criminal proceeding*, [Emphasis added] where they

may state only that the matter has been expunged *Art. 55A.401. Effect of Final Expunction*

*Order.*

81. Expunction is considered a statutory privilege rather than a constitutional or common-law

right.   It is a civil proceeding governed by the Texas Rules of Civil Procedure, and the

petitioner carries the burden of proving that all statutory requirements have been met.  The

trial court must strictly comply with the statutory requirements and has no equitable power to

extend the protections of the expunction statute beyond its stated provisions *Ex parte Butler*,

2019 Tex. App. LEXIS 3618, *Tex. Dep't of Pub. Safety v. J.S.H.*, 2017 Tex. App. LEXIS

7299, *Tex. Dep't of Pub. Safety v. J.H.J.*, 274 S.W.3d 803.

82. Furthermore, the expunction order requires that each official, agency, or other governmental

entity named in the order must return all records and files subject to the expunction order to

the court or obliterate all portions of the record that identify the person who is the subject of

the order and notify the court of the action Art. 55A.353. *Disposition of Expunged Records*.

The court also provides a listing of each entity that may have records subject to the

expunction order and requires the deletion or redaction of these records from public records

Art. 55A.205. *Required Content of Expunction Order.*

83. The Petitioner received his Expunction Order on March 6th, 2024 and on August 8th, 2024,

the Petitioner was deposed in a different matter, as an expert witness.

84. During the deposition, the Harris County Attorney began asking questions directly related to

the expunged matter.

85. The Petitioner stated that it was off-limits because the matter was under an expunction order. Nonetheless, the Harris County Attorney pressed on.

86. The Petitioner asserts that the attorneys on the matter for whom he was an expert filed a *Motion to Suppress* the any of information that the Harris County Attorney may have garnered from the deposition.

87. Regardless, it is a travesty that all or some of the Respondents colluded and conspired to share and use this information in violation of the expunction order.

This is a Conspiracy and here is how the actions of the Respondents align with the requirements for a Conspiracy to share information protected by an expunction order in Texas are as follows:

    i.   <u>Agreement</u>: There must be an agreement between two or more persons that they or one or more of them will engage in conduct that constitutes the offense <u>Sec. 15.02. Criminal Conspiracy.</u>, <u>Sec. 466.313. Conspiracy. [Expires September 1, 2029]</u>.

        a.   Here, one or more of the Respondents that had knowledge of the Petitioners criminal matter, which was expunged, shared the information with the Harris County Attorney's Office.  While it is unclear which one, or all of the Respondents, that shared the expunged information with the Harris County Attorney's Office, it is certain that there could have been no other Respondent.  This is truly a matter of res ipsa loquitor – where the Respondents had a duty to the Petitioner to not share the expunged information; the Respondents breached that  duty when they intentionally and openly shared the expunged information; the breach of this duty was the cause of the harm that the Petitioner suffered; the harm caused includes, but

is not limited to reputational damages and violations of the Petitioner's statutory rights.

   ii. <u>Intent</u>: The parties must have the intent that a felony be committed Sec. 15.02. Criminal Conspiracy., Sec. 466.313. Conspiracy. [Expires September 1, 2029].

      a. Here, it was the absolute intent of the Respodents to share this information. This is not a "mistake" that can be taken lightly.

   iii. <u>Overt Act</u>: One or more of the conspirators must perform an overt act in pursuance of the agreement Sec. 15.02. Criminal Conspiracy., Sec. 466.313. Conspiracy. [Expires September 1, 2029].

      a. Here, the overt act was the Harris County Attorney utilizing the expunged information in an effort to discredit or impeach the Petitioner as an expert.

   iv. <u>Unlawful Purpose</u>: The object of the conspiracy must be to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means § 3.02 Imposition of Joint and Several Liability.

      a. Here, the Harris County Attorney was attempting to discredit or impeach the Petitioner by what would generally be considered a lawful purpose, but executed it by unlawful means – utilizing the expunged information.

   v. <u>Damages</u>: There must be damages as a proximate result of the conspiracy.

      a. Here, the damages suffered include but are not limited to reputational damages and violations of the Petitioner's statutory rights.

88. Additionally, it is important to note that an agreement constituting a conspiracy may be inferred from the acts of the parties involved.   It is also not a defense to prosecution for conspiracy that one or more of the coconspirators is not criminally responsible for the object

offense, has been acquitted, has not been prosecuted or convicted, or is immune from prosecution Sec. 15.02. Criminal Conspiracy., Sec. 466.313. Conspiracy. [Expires September 1, 2029].

89. Furthermore, the following Texas Government Codes were violated by the all or some of the Respondents. The titles clearly indicate the violation explanation:

    i.  Tex. Gov't Code § 411.085 Unauthorized Obtaining, Use, or Disclosure of Criminal History Record Information; Penalty.

    ii.  Tex. Gov't Code § 552.101 Exception: Confidential Information

    iii.  Tex. Gov't Code § 552.107 Exception: Certain Legal Matters

    iv.  Tex. Gov't Code § 552.108 Exception: Certain Law Enforcement, Correction, and Prosecutorial Information.

    v.  Tex. Gov't Code § 552.142 Exception: Confidentially of Records Subject to Order of Nondisclosure.

    vi.  Tex. Gov't Code § 552.1425 Civil Penalty: Dissemination of Certain Criminal History Information.

    vii.  Tex. Code Crim. Proc. Art. 55.04 Violation of Expunction Order

    viii.  Tex. Penal Code § 39.02 Abuse of Official Capacity

    ix.  Tex. Penal Code § 39.03 Official Oppression

    x.  Tex. Penal Code § 39.06 Misuse of Official Information

    xi.  Tex. R. Prof Conduct 4.04, Texas State Bar Rule, Respect for Rights of Third Persons

90. Therefore, considering the information in this section, *ALL* Respondents should be found liable to the Petitioner for Conspiracy.

### E.  NEGLIGENCE

91. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

92. In the alternative to Conspiracy, the Petitioner asserts a claim of Negligence.

93. The common law elements of Negligence: Duty, Breach, Causation, Damages/Harm.

94. Here, each one of the Respondents had a *duty* to assure that the Petitioner's rights – Constitutional, Statutory, and otherwise – were protected.

95. Here, each one of the Respondents breached their duties to the Petitioner at some point in the chain reaction of the *Six Dominos* – each Respondent was a clown in this circus.

96. Here, the actions of each one of the Respondents actions directly caused the damages suffered by the Petitioner.

97. And, here, at some point in the chain reaction of the *Six Dominos* caused harm/damages to the Petitioner – each of these harms are articulate in the sections above.

98. Therefore, *ALL* Respondents should be found Negligent.

### VIII.   42 USC §1983 — NO QUALIFIED IMMUNITY

99. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

100.    All Respondents may claim that they are entitled to Qualified Immunity.

101.    The two-part test for Qualified Immunity in Texas involves: (1) determining whether the plaintiff has alleged a violation of a clearly established constitutional right, and (2) assessing whether the official's conduct was objectively reasonable at the time of the incident *Padilla v. Mason*, 169 S.W.3d 493, *Enriquez v. Villanueva*, 2018 Tex. App. LEXIS 6966, *Leo v. Trevino*, 285 S.W.3d 470.

102.    The first prong requires the court to decide if the facts, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right. If no constitutional violation is shown, the official is entitled to immunity *Padilla v. Mason*, 169 S.W.3d 493, *Enriquez v. Villanueva*, 2018 Tex. App. LEXIS 6966. If a violation is shown, the next step is to determine whether the right was clearly established at the time of the alleged violation incident *Padilla v. Mason*, 169 S.W.3d 493, *Enriquez v. Villanueva*, 2018 Tex. App. LEXIS 6966, *Leo v. Trevino*, 285 S.W.3d 470.

103.    The second prong involves evaluating the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time of the incident. This assessment considers whether a reasonable officer could have believed the conduct to be lawful under the circumstances incident *Padilla v. Mason*, 169 S.W.3d 493, *Enriquez v. Villanueva*, 2018 Tex. App. LEXIS 6966, *Leo v. Trevino*, 285 S.W.3d 470.

104.    The facts of this incident indicate that the Petitioner's First, Fourth, and Fourteenth Amendment Rights have been violated by *ALL* Respondents. Hence, the first prong is met.

105.    The second prong of objective reasonableness stands on its own. It was not reasonable that Meade intentionally, maliciously and in a retaliatory manner, reported untruths and falsehoods that started the chain reaction of the fall of the *Six Dominoes*.

106.    Because *ALL* Respondents colluded and conspired to maliciously prosecute the Petitioner, then colluded and conspired to wrongfully and unlawfully shared/release information protected by an expunction order, *no Qualified Immunity* can be granted to any of the Respondents.

## IX.    42 U.S.C. §1983 — MONTGOMERY COUNTY DISTRICT ATTORNEY'S OFFICE AND HARRIS COUNTY ATTORNEY'S OFFICE LIABILITY UNDER *MONELL*

107.    Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

108.    A municipality can be held liable under *Monell* (*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658) for malicious prosecution and a violation of an expunction order if the plaintiff can demonstrate that the constitutional violation resulted from an official policy or custom of the municipality. Under *Monell,* a plaintiff must show that the injury resulted from a governmental "policy or custom" *Walsweer v. Harris County*, 796 S.W.2d 269. This includes policies officially adopted and promulgated by the municipality's officers or a persistent and widespread practice that constitutes a custom *Harris Cty. v. Coats*, 607 S.W.3d 359, *Gomez v. Hous. Auth.* , 148 S.W.3d 471.

109.    In the context of malicious prosecution and violation of an expunction order, if the plaintiff can show that these actions were taken pursuant to an official policy or custom, and that the policy or custom was the moving force behind the constitutional violation, then the municipality can be held liable under *Monell Sauls v. Montgomery County*, 18 S.W.3d 310, *Cain v. City of Conroe*, 2020 Tex. App. LEXIS 9238.

110.    The key to holding a municipality liable under *Monell* in such cases is demonstrating that the constitutional violations were a result of an official policy or custom, and not merely the actions of individual employees acting independently of such policies or customs *Harris Cty. v. Coats*, 607 S.W.3d 359, *Harris Cnty. v. Deary*, 695 S.W.3d 566.

111.    Here, the Montgomery County District Attorney's Office violated the Petitioner's Constitutional Rights, which were an apparent result of their customs to allow any law enforcement officer, regardless of jurisdiction, to submit a false affidavit, loaded with untruths, and to allow the gross Constitutional Violations that the Petitioner suffered.  This was the moving force behind the violations and therefore, they can all be held liable under *Monell.*

112.    Further, Montgomery County District Attorney's Office did not protect the Petitioner's *Order of Expunction* as it was shared through a conspiracy with the Harris County Attorney's Office and/or others, violating the Petitioner's Statutory Rights.  This was also a moving force behind the violations and therefore, they can all be held liable under *Monell.*

113.    Here, the Harris County Attorney's Office violated the Petitioner's Statutory Rights by engaging in the conspiracy to seek and use the Petitioner's expunged information, in violation of a multitude of Texas Statutory violations.  See Line 86. i. through xi. above.

## X.    DAMAGES

114.    Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

115.    As a result of Respondents Constitutional, Statutory, Common-Law, and Tortious violative acts, the Petitioner has suffered significant damages which include but are not limited to loss of liberty, economic losses, mental anguish, among others.

## XI.    ATTORNEY'S FEES AND COSTS

116.    Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

117.    Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, Petitioner

asserts right to an award of attorney's fees and costs under its 42 U.S.C. § 1983 pleadings if

he prevails.

## XII.    RELIEF REQUESTED

118.    Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs,

inclusive, with regard to all facts, claims, allegations, and causes of actions.

119.    Petitioner seeks the reasonable and necessary attorney's fees incurred in connection with

this claim under *Tex. Civ. Prac. & Rem. Code Section 38.001*.

120.    Under Texas law, to recover attorney's fees, the Petitioner must prove that the attorney's

fees were reasonable and necessary for the prosecution of the case. *Arthur Anderson & Co. v.

Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex.1997). A Petitioner must ask the fact-

finder to award a specific dollar amount, not merely an amount as a percentage of judgment.

Id. at 819. Texas courts, like the Fifth Circuit, generally use the lodestar method for

calculating reasonable attorney's fees. See *Toshiba Mach. Co., Am. v. SPM Flow Control,

Inc.*, 180 S.W.3d 761, 782–83 (Tex.App.-Fort Worth 2005, pet. granted, judgm't vacated

w.r.m.); see also *Guity v. C. C.I. Enters., Co.*, 54 S.W.3d 526, 528 (Tex.App.-[1st Dist.]

2001, no pet.) (stating that in determining the reasonableness of attorney's fees, the fact

finder must be guided by a specific standard, and that this standard is substantially the same

under Texas and federal law); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th

Cir.1995) (applying lodestar method with respect to attorney's fees in connection with

federal claims). However, under Texas law, strict reliance on the lodestar method of

calculation is not required if the Petitioner can otherwise demonstrate that the fees sought are

reasonable. See e.g., *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48

S.W.3d 225, 240–41 (Tex.App.-San Antonio 2001, pet. denied).  "The first step under the lodestar method is to determine the "lodestar" amount by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See La. Power & Light Co.,* 50 F.3d at 324.  In the second step of the lodestar method, a court considers whether the lodestar figure should be adjusted upward or downward depending on its analysis of additional factors. *Id.*  The Texas Supreme Court has identified eight factors to be used by the fact-finder to determine the reasonableness of the fees.  *Arthur Anderson & Co*., 945 S.W.2d at 818. If these factors are accounted for in determining the lodestar amount, they should not be considered when making adjustments. *Guity*, 54 S.W.3d at 529.

121.    For these reasons, Petitioner prays for judgment against Respondents, any or all of them, for following:

   a.  Actual damages;
   b.  Pre-judgment and post-judgment interest;
   c.  Punitive and exemplary damages against Respondent in an amount to be determined and as allowed by the Court. *See Smith v. Wade*, 461 U.S. 30 (1983);
   d.  Attorneys' fees;
   e.  Costs of Court; and
   f.  Such other and further relief as the Court deems just and equitable including appropriate

## XIII.   JURY DEMAND

122.    Petitioner respectfully demands trial by jury and has tendered the appropriate fee for the same.

123.    **WHEREFORE**, Petitioner respectfully requests Respondent be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief against Respondent.

124.    Petitioner further respectfully request that he be afforded all due expediency within the

discretion of this Honorable Court to facilitate the preservation of evidence, to demonstrate

that such unconscionable conduct will not be tolerated in a civilized society, and to ensure

that justice may be served.


Respectfully Submitted,

*/s/Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No. 0403083
Admitted:
**U.S. District Court, Southern District of Texas**
SDTX Bar No. 3746531
**info@vincentlawpllc.com**
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas  77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas  77094
Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PETITIONER**